10-4318-cr
United States v. Quinones

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 1st day of February, two thousand twelve.

PRESENT:

AMALYA L. KEARSE,
JOSÉ A. CABRANES,
CHESTER J. STRAUB,

*Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

*Appellee,*

v.                                                     No. 10-4318-cr

CARLOS QUINONES,

*Defendant-Appellant.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**FOR DEFENDANT-APPELLANT:**          GEORGIA J. HINDE, New York, NY

1

FOR APPELLEE:                                   BRENDA K. SANNES, Assistant United States
                                                Attorney (Ransom P. Reynolds, Assistant
                                                United States Attorney, *of counsel*, Richard S.
                                                Hartunian, United States Attorney, *on the brief*),
                                                Office of the United States Attorney for the
                                                Northern District of New York, Syracuse,
                                                NY.

Appeal from a judgment of the United States District Court for the Northern District of New York dated October 1, 2010 (Glenn T. Suddaby, *Judge*).

**UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is hereby **AFFIRMED**.

Defendant Carlos Quinones appeals from a October 1, 2010, judgment of the District Court convicting him, on his conditional guilty plea to charges of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(a)(2) and possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and sentencing him principally to concurrent terms of ninety-six months' imprisonment. We assume the parties' familiarity with the underlying facts and procedural history of the case.

## I.

Quinones's primary claim of error on appeal is that the District Court erred in failing to suppress evidence obtained in a warrantless search of the residence he shared with his girlfriend by New York state parole officers, assisted by police officers. In reviewing a district court's denial of a suppression motion, we review its conclusions of law *de novo*, and its factual findings for clear error, viewing the evidence in the light most favorable to the Government. *United States v. Garcia*, 339 F.3d 116, 118-19 (2d Cir. 2003).

"Whether a search is reasonable is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Samson v. California*, 547 U.S. 843, 848 (2006) (internal quotation marks omitted). Parolees subject to terms and conditions of release "have severely diminished expectations of privacy by virtue of their status alone." *Id.* at 852; *see also id.* at 850 (observing that the privacy-expectations of parolees are even lower than those of probationers "because parole is more akin to imprisonment than probation is to imprisonment"). Indeed, upon his release from prison, Quinones signed a Certificate of Release, which stated: "I fully understand

2

that my person, residence and property are subject to search and inspection." Among the conditions of his parole was the following: "I will permit my Parole Officer to visit me at my residence and/or place of employment and I will permit the search and inspection of my person, residence and property." As we have previously observed, "persons on supervised release who sign such documents manifest an awareness that supervision can include intrusions into their residence and, thus, have a severely diminished expectation of privacy." *United States v. Newton*, 369 F.3d 659, 665 (2d Cir. 2004) (internal quotation marks omitted).[1]

Weighed against this "severely diminished" privacy expectation, the State's interest in monitoring parolees was clearly sufficient to justify the search of Quinones's residence. The Supreme Court has repeatedly recognized that states have an "overwhelming interest" in supervising parolees in order to prevent recidivism, *Penn. Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 365 (1998), and has specifically observed that "a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Samson*, 547 U.S. at 853.

Although, under New York law, a parole search that is so divorced from reasonable suspicion as to be arbitrary and capricious might not be considered "rationally and substantially related to the performance of [the parole officer's duty]," *People v. Huntley*, 43 N.Y.2d 175, 183 (1977), that is not the case here, where the parole officer had reason to suspect not only that Quinones was violating the terms of his parole, but also that he was engaged in criminal activity. Specifically, after discovering that Quinones had remained in New York despite telling his parole officer that he would be traveling to Florida, the officer discovered approximately $450 in cash on Quinones's person. This discovery provided a basis for suspecting that Quinones, who had previously been convicted on drug charges, might be engaged in the distribution of drugs.

_____

[1] The Government contends that, following the Supreme Court's decision in *Samson*, parolees in fact have *no* legitimate expectation of privacy and thus the search of Quinones residence could not have violated the Fourth Amendment, irrespective of the legitimacy of the State's interests in conducting it. We need not decide whether or not *Samson* bears the weight the Government suggests because we conclude that the search in this case satisfies even the more solicitous standard set out by the New York Court of Appeals in *People v. Huntley*, 43 N.Y. 2d 175, 183 (1977) (authorizing parole searches where the search is "rationally and substantially related" to the parole officer's duty). Therefore, as we have before, we will "save any further analysis for a case where a distinction between *Huntley* and *Samson* would make a difference." *United States v. Watts*, 301 F. App'x 39, 42 n.2 (2d Cir. 2008) (summary order); *see also United States v. Viserto*, 391 F. App'x 932, 934 (2d Cir. 2010) (summary order) (same); *United States v. Nazario*, 374 F. App'x 63, 65 n.1 (2d Cir. 2010) (summary order) (same).

3

On balance, therefore, we agree with the District Court that the State's interest in monitoring Quinones to prevent recidivism outweighed Quinones's severely diminished expectation of privacy, particularly given the facts that Quinones had previously been convicted on drug charges, had misled his parole officer, was stopped while violating two minor parole conditions, and had been discovered with a large amount of cash on his person.

## II.

Quinones also argues that, before reaching this conclusion, the District Court should have held an evidentiary hearing, and urges us to remand the case to the District Court for this purpose. An evidentiary hearing on a motion to suppress "ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 157, 165 (2d Cir. 2008). We review a district court's denial of a request for an evidentiary hearing on a motion to suppress for abuse of discretion. *Id.* Having reviewed the record, we conclude that Quinones has not established any "contested issues of fact going to the validity of the search." *United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005). The factual issues that Quinones has identified on appeal were not, in fact, material to the District Court's ruling on his motion to suppress, which we affirm based on the uncontested facts recited above.

## CONCLUSION

We have considered all of Quinones's arguments on appeal and find them to be without merit. Accordingly, for the foregoing reasons, we **AFFIRM** the judgment of the District Court.

FOR THE COURT
Catherine O'Hagan Wolfe, Clerk

4