Black v. Petitinato

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 30th day of January, two thousand nineteen.

Present:      PIERRE N. LEVAL,
              ROSEMARY S. POOLER,
              REENA RAGGI,
                        *Circuit Judges*.

_____

Theadore Black, Jr.,

                        *Plaintiff-Appellant*,

                   v.                                                    18-960

Parole Officer Dominique Petitinato, Senior Parole Officer Linda Jefferies, New York State Division of Parole, All Parole Officers, Police Officer Damico, Lieutenant Doyle, Sherman Payami, a former employee of the NYS Department of Corrections and Community Supervision, Parole Officer Petitinato's partner of 9-29-2015,

                        *Defendants-Appellees*.[1]

_____

---
[1] The Clerk of the Court is directed to amend the caption as above.

Appearing for Appellant:     Theadore Black, Jr., pro se, Brooklyn, N.Y.

Appearing for Appellees:     David Lawrence III, Assistant Solicitor General (Judith N. Vale, Senior Assistant Solicitor General, *on the brief*), *for* Barbara D. Underwood, Attorney General of the State of New York, New York, N.Y., *for State Appellees.*

Elina Druker, Assistant Corporation Counsel (Aaron Bloom, Assistant Corporation Counsel, *on the brief*), *for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, N.Y., *for City Appellees.*

Appeal from the United States District Court for the Eastern District of New York (Cogan, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Appellant Theadore Black, Jr. appeals from the February 27, 2018, judgment of the United States District Court for the Eastern District of New York (Cogan, *J.*), granting Appellees' motion for summary judgment on his claims under 42 U.S.C. § 1983 for illegal search, false arrest, malicious prosecution, and conspiracy to violate his civil rights. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

We review a grant of summary judgment de novo, "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126–27 (2d Cir. 2013). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

## I.     Illegal Search

The district court properly granted summary judgment to the defendants on the illegal search claim based on qualified immunity. "[Q]ualified immunity shields [public] officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted); *accord Berg v. Kelly*, 897 F.3d 99, 109 (2d Cir. 2018). The qualified immunity analysis involves two principal issues: (1) whether plaintiff has shown facts demonstrating a violation of a constitutional right; and (2) if so, whether that "right was clearly established at the time of the challenged conduct." *See Wood v. Moss*, 572 U.S. 744, 757 (2014) (internal quotation marks omitted); *accord Ganek v. Leibowitz*, 874 F.3d 73, 80 (2d Cir. 2017).

"[S]ummary judgment on qualified immunity grounds is appropriate when a defendant shows that no reasonable jury, viewing the evidence in the light most favorable to the Plaintiff,

could conclude that the defendant's actions were objectively unreasonable in light of clearly established law." *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 102 (2d Cir. 2003) (internal quotation marks omitted). To be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Further, "[a]n officer's actions are objectively reasonable if officers of reasonable competence could disagree on the legality of the defendants' actions." *Crotty*, 346 F.3d at 102 (internal quotation marks omitted).

As a condition of parole, New York requires that parolees consent to searches of their homes by parole officers. N.Y. Comp. Codes R. & Regs. tit. 9, § 8003.2(d). Notwithstanding that consent, the New York courts have determined that the legality of a search of a parolee's home by his parole officer turns on whether the search is "rationally and reasonably related to the performance of the parole officer's duty." *People v. Huntley*, 43 N.Y.2d 175, 181 (1977); *see also United States v. Newton*, 369 F.3d 659 665-66 (2d Cir. 2004) (applying the *Huntley* standard). Our prior decisions have treated the *Huntley* "rationally and reasonably related" test as the standard for determining the lawfulness of a parole officer's search under the Fourth Amendment. *E.g., Newton*, 369 F.3d at 665-66.

In *Samson v. California*, the Supreme Court held that a California police officer's suspicionless search of a parolee did not violate the Fourth Amendment. 547 U.S. 843, 846-47, 852, 856 (2006). The Court employed a multi-factor test, which included as a factor the consent to search required of parolees as a condition of parole. *Id.* at 852. (The California parolees' consent form was broader than that used in New York in that it includes an "advisement" that the parolee is "is subject to search . . . at any time of the day or night, with or without a search warrant or with or without cause." Cal. Penal Code § 3067(b)(3).)

The district court, in granting summary judgment to the defendants, reasoned that, if the Fourth Amendment lawfulness of the search were judged under the *Huntley* standard, the defendants would not be entitled to summary judgment because the search was without reasonable suspicion and was therefore not "reasonably and rationally related" to the performance of the parole officer's duties. *Black v. Petitinato*, No. 16-cv-2320 (BMC) (RLM), 2018 WL 1115692, at *3-4 (E.D.N.Y. Feb. 27, 2018). Nonetheless, the district court found that it was unclear whether the *Huntley* standard had been superseded by the Supreme Court's *Samson* decision. Accordingly, the district court concluded that there is no clearly established law to the effect that the search violated Fourth Amendment standard. *Id.* at *5-6.

We agree with the district court that the law is unclear whether the *Huntley* standard has been superseded by *Samson*. Indeed, we have noted on several occasions that it is an open question whether *Samson* may justify a parole officer's suspicionless search of a New York parolee's home. *See United States v. Barner*, 666 F.3d 79, 86 (2d Cir. 2012) (declining to address whether search of parolee's home "could have been justified under *Samson* . . . without . . . applying the *Huntley* standard"); *United States v. Viserto*, 391 F. App'x 932, 934 (2d Cir. 2010) (summary order); *United States v. Watts*, 301 F. App'x 39, 42 n.2 (2d Cir. 2008) (summary order) ("We save for another day and another case the question . . . whether *Samson* . . . supplants our prior cases in which we assessed the 'reasonableness' of a parole search under *People v. Huntley* . . . ."). We therefore conclude that there was no clearly settled law telling the

3

parole officers that their search of Black's residence violated the standards of the Fourth Amendment.

Black makes a second contention that his Fourth Amendment rights were violated because the parole officers were accompanied in their search by police officers, and that the search was unlawfully motivated by the police officers' investigatory purposes rather than the concerns of the parole officers. We reject this claim. We have held that police officers may coordinate with parole officers to conduct a search of a parolee's home. Police officers are permitted to participate in probation-related searches as a "coordinated effort" between agencies where "the probation officers are pursuing legitimate probation-related objectives." *United States v. Reyes*, 283 F.3d 446, 464 (2d Cir. 2002). None of Black's allegations support his claim that the search was disguised as a parole search to avoid obtaining a judicial warrant that would have been required for a police search. *See United States v. Lambus*, 897 F.3d 368, 404-05 (2d Cir. 2018) ("[T]he fact that a new prosecution may ensue is not a sign that the parole officer was not pursuing his normal duties.").

## II.    False Arrest

The district court also correctly granted summary judgment with respect to the false arrest claim because the defendants had probable cause to arrest Black, and probable cause to arrest is a complete defense to such a claim. *See Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013).

"Probable cause for an arrest requires an officer to have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012) (internal quotation marks omitted). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (*quoting Illinois v. Gates*, 462 U.S. 213, 243-44 n.13 (1983)); *accord United States v. Valentine*, 539 F.3d 88, 93 (2d Cir. 2008). Moreover, a defending officer "will still be entitled to qualified immunity . . . if he can establish that there was arguable probable cause to arrest." *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013) (alteration in original) (internal quotation marks omitted).

The defendants had at least arguable probable cause to arrest Black for both the parole violation and the criminal possession charge based on the presence of the knives in his apartment. First, it was a violation of Black's parole to possess dangerous weapons, including knives, or to commit a crime. Second, it was a crime for Black to possess those particular knives. N.Y. Penal Law § 265.01(1) (criminalizing possession of "metal knuckle knife" or "gravity knife").

In a backpack found in a hallway closet of Black's apartment, next to several boxes with Black's name on them, defendants discovered illegal knives. The backpack also contained photos of Black and a woman who was not an occupant of the apartment. The parole officer, in addition, was aware that Black previously had possessed dangerous weapons in violation of the conditions of parole. Based on the foregoing, the defendants could reasonably conclude that Black had

4

possession of the knives, and that they had probable cause for Black's arrest. *See Maryland v. Pringle*, 540 U.S. 366, 371-72 (2003) (holding that police officers had probable cause to arrest all three occupants of a vehicle where cocaine was accessible to all three).

### III.    Malicious Prosecution

The district court also properly granted summary judgment on the malicious prosecution claim. To state a claim for malicious prosecution under section 1983, a plaintiff must allege "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor . . . [and] that there was (5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) (internal quotation marks omitted). "Where the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused, for these purposes, only when its final disposition is such as to indicate the innocence of the accused." *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997). Dismissals of criminal proceedings for facial insufficiency are "not sufficiently favorable to the accused to be indicative of innocence." *Id.* The dismissal of charges as part of a plea bargain also does not constitute a favorable termination. *See Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 418 (2d Cir. 1999).

Neither the criminal prosecution, nor the parole hearing, terminated favorably for Black. The criminal charges against Black were dismissed for facial insufficiency. Therefore, they did not terminate favorably for the purposes of malicious prosecution. *See Murphy*, 118 F.3d at 948. Moreover, Black pleaded guilty to a different parole violation as a part of a plea agreement and the other violation charges were dismissed. Because the dismissals were a result of Black's plea agreement, they were also not favorable terminations. *See Posr*, 180 F.3d at 418.

### IV.    Section 1983 Conspiracy

Finally, the district court properly granted summary judgment to the defendants on the section 1983 conspiracy claim. As the district court correctly found, Black produced no evidence that the defendants entered into an agreement to deprive him of his constitutional rights. *Black*, 2018 WL 1115692, at *7.

We have considered the remainder of Black's arguments and find them to be without merit. Accordingly, the order of the district court hereby is AFFIRMED. Each side to bear its own costs.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk