19-4358-cr
*United States v. Greg Cantoni*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of December, two thousand twenty-one.

Present:

> GUIDO CALABRESI,
> DENNY CHIN,
> WILLIAM J. NARDINI,
> *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

v.                                                              19-4358-cr

GREG CANTONI,

> *Defendant-Appellant*.

---

| | |
|---|---|
| For Appellee: | SARITHA KOMATIREDDY, Assistant United States Attorney (Jo Ann Navickas, David J. Lizmi, *on the brief*), *for* Breon Peace, United States Attorney, Eastern District of New York, Brooklyn, NY |
| For Defendant-Appellant: | LUCAS ANDERSON, Rothman, Schneider, Soloway & Stern, LLP, New York, NY |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Eric N. Vitaliano, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Greg Cantoni appeals from a judgment of conviction entered on December 20, 2019, after a jury found him guilty of bank robbery in violation of 18 U.S.C. § 2113(a). We assume the reader's familiarity with the record.

On appeal, Cantoni argues that: (1) the district court's preclusion of Cantoni's proffered expert witnesses constituted error, both under Federal Rule of Evidence 702 and the United States Constitution; (2) the government violated its discovery obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and Rule 16(a) of the Federal Rules of Criminal Procedure; (3) the district court erred by admitting the government's late-disclosed cell site evidence; (4) the district court erred by refusing to strike the testimony of Detective Giuseppe Giuca as a sanction for the government's violation of its obligations under the Jencks Act, 18 U.S.C. § 3500; and (5) the district court erred by not holding an evidentiary hearing on Cantoni's motion to suppress evidence derived from Cantoni's cellphone number. As explained below, we disagree, and thus affirm the judgment of the district court.

## I.     The Preclusion of Cantoni's Expert Witnesses

Cantoni first argues that the district court erred under Federal Rule of Evidence 702 and the United States Constitution by precluding Simon Cole and John Minor from testifying as expert witnesses for the defense.

Rule 702 allows the admission of expert witness testimony if:

> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The determination of whether testimony is admissible as an expert opinion is multi-factored and flexible, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–94 (1993), and a trial judge has "considerable leeway" in determining whether to admit expert testimony, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Accordingly, a district court's decision to admit or exclude expert scientific testimony is reviewable for abuse of discretion and will be overturned only where the decision was "manifestly erroneous." *United States v. Jones*, 965 F.3d 149, 161–62 (2d Cir. 2020).

The district court's decisions to preclude Cantoni's expert witnesses were not manifestly erroneous. It was not an abuse of discretion for the district court to conclude that Cole's opinions would not aid the jury. Cantoni proposed that Cole give three opinions: categorical conclusions of identification are indefensible; there was an increased probability of a print mismatch due to an automated system; and there have been only two studies of latent print identification. Cantoni is

2

correct that Rule 702 permits an expert to give a dissertation on general principles and to leave the factfinder to apply those principles. *See* Fed. R. Evid. 702 advisory committee's note ("[I]t might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case."). But the district court excluded Cole's opinions because they would only (1) rebut evidence that the district court had already precluded the government from presenting, (2) raise issues that the defense could address on cross-examination, and (3) convey several studies Cole had read without otherwise aiding the jury, rendering him a mere conduit to hearsay. The district court's reasoning was sound, and we conclude that it did not abuse its discretion in precluding Cole from testifying.[1]

Nor did the district court deprive Cantoni of his constitutional right to present a complete defense. Although a defendant "has a fundamental due process right to present a defense," that right is "not absolute, for a defendant must comply with established rules of procedure and evidence designed to assure both fairness and reliability." *United States v. Mi Sun Cho*, 713 F.3d 716, 721 (2d Cir. 2013) (internal citations and quotation marks omitted). "Whether the exclusion of witnesses' testimony violated defendant's right to present a defense depends upon whether the omitted evidence evaluated in the context of the entire record creates a reasonable doubt that did not otherwise exist." *Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir. 2001) (alterations and internal quotation marks omitted). Cantoni argues that fingerprint and cell site evidence "w[as] absolutely critical to the government's case . . . ." Cantoni Br. 48. Even if true, this assertion does not explain how Cole's or Minor's testimony would have "create[d] a reasonable doubt that did not otherwise exist." *Schriver*, 255 F.3d at 56. Instead, Cantoni appears to argue that constitutional error occurs whenever a court's evidentiary decision results in only one side presenting evidence on an issue to the jury. Cantoni's sole authority for this argument, *Holmes v. South Carolina*, 547 U.S. 319 (2006), is inapposite and does not establish such a sweeping rule. *Id.* at 331. In sum, the district court's preclusion of Cantoni's expert testimony was not error, whether considered under Rule 702 or the United States Constitution.

## II.    The Government's Violations of their Discovery Obligations

Cantoni next argues that he was deprived of his right to a fair trial by the government's belated disclosure of: (1) cell site evidence; (2) the existence of an NYPD Latent Print Section analysis excluding Cantoni as the source of a fingerprint pulled from the demand note used in the robbery charged in Count Three of the indictment;[2] and (3) a USM-12 intake form reflecting that Cantoni provided his cell phone number to law enforcement during booking and an accompanying *Miranda* rights waiver form. Cantoni raises claims under *Brady v. Maryland*, 373 U.S. 83 (1963), and Federal Rule of Criminal Procedure 16(a).

---

[1] As to Minor, the district court did not merely fault Minor for not performing his own analysis of the cell site data, but also found that Minor failed to reach any conclusion beyond identifying certain best practices the government's expert failed to follow. The district court therefore concluded that Minor's opinion would not be helpful to the jury.

[2] Cantoni was indicted on three counts. Count One was robbery of a bank in Brooklyn, Count Two was a robbery of a bank in Staten Island, and Count Three was a robbery of a bank in Queens. The jury ultimately failed to reach a verdict on Counts One and Three, the district court declared a mistrial as to those counts, and the government dismissed those charges at Cantoni's sentencing. Cantoni was convicted only on Count Two, which was supported by evidence of a different latent palm print from that at issue in Count Three.

"There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused . . . ; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Evidence is material under *Brady*, such that prejudice can be established, "when there is a reasonable likelihood that disclosure of the evidence would have affected the outcome of the case or would have put the case in such a different light as to undermine confidence in the outcome." *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004) (internal citation omitted).

Rule 16(a) requires that the government disclose certain types of evidence within its custody or control. Fed. R. Crim. Proc. 16(a)(1)(A)–(F). A district court's decision to nonetheless admit evidence that was the subject of a Rule 16(a) violation is reviewed for abuse of discretion. *See United States v. Walker*, 974 F.3d 193, 203 (2d Cir. 2020). Such a decision "is not grounds for reversal unless the violation caused the defendant substantial prejudice," *Walker*, 974 F.3d at 203 (internal quotation marks omitted). A showing of substantial prejudice requires that the defendant "demonstrate that the untimely disclosure of the evidence adversely affected some aspect of his trial strategy." *Id.* at 204 (internal quotation marks omitted).

As the government conceded at oral argument, it did not promptly comply with its discovery obligations. Nevertheless, it correctly argues that Cantoni has failed to demonstrate that he was prejudiced by the timing of its evidentiary disclosures within either the meaning of *Brady* or Rule 16. As to the cell site evidence, Cantoni offers only speculation, stating that with more time the defense "may have" found that Cantoni's phone often activated a cell tower near one of the three banks or determined that Cantoni's phone activated certain cell towers when he was not in fact close to them.[3] Cantoni Br. 52. As to the NYPD Latent Print Section fingerprint analysis, Cantoni simply argues that fingerprint evidence was "absolutely crucial to the government's case" and that Cantoni was "prevented . . . from taking full advantage of th[e] report to undermine the government's law enforcement witnesses and discredit their theory that all three of the charged robberies . . . involve[ed] the same perpetrator." Cantoni Br. 53. This argument is conclusory and fails to account for the fact that Cantoni apparently did convince the jury to doubt the government's theory that Cantoni committed all three robberies, as they returned a guilty verdict on only one of them. Finally, Cantoni devotes only one sentence to arguing that he was prejudiced by the timing of the government's disclosure of the statements he made during booking, asserting that he was "deprived . . . of a sufficient opportunity to challenge the admissibility of evidence recovered as a fruit of his custodial statements." Cantoni Br. 54. This is insufficient to establish prejudice, and so Cantoni's claims under *Brady* and Rule 16 fail.

## III. The District Court's Refusal to Strike Detective Giuca's Testimony

Cantoni next argues that the district court was required by the Jencks Act (18 U.S.C. § 3500), and by Federal Rule of Criminal Procedure 26.2(e) to strike the testimony of Detective Giuca. Under the Jencks Act, once a witness has testified on direct examination, "the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in

---

[3] Because a district court's decision not to exclude evidence disclosed in violation of Rule 16 does not warrant reversal unless the violation caused the defendant substantial prejudice, *see Walker*, 974 F.3d at 203, Cantoni's argument that the district court abused its discretion by denying his motion to preclude the government from offering the cell site evidence also necessarily fails.

4

possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500. "If the party who called the witness disobeys an order to produce or deliver a statement, the court must strike the witness's testimony from the record" or "declare a mistrial if justice so requires." Fed. R. Crim. P. 26.2(e). Cantoni's argument—that the plain language of § 3500 and Rule 26.2(e) *required* the district court to strike Detective Giuca's testimony—rests on a misapprehension of the availability of harmless error review of such Jencks Act violations. "While the harmless error doctrine must be applied strictly in Jencks Act cases, failure to disclose the withheld material must be deemed harmless where there is no reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Nicolapolous*, 30 F.3d 381, 383–84 (2d Cir. 1994) (internal quotation marks and citation omitted). Cantoni makes no argument that he was prejudiced by the late disclosure of § 3500 material related to Detective Giuca and merely argues that the statute and the Rule contain mandatory language. In any event, after the late disclosure of the § 3500 material, Cantoni was permitted to recall Detective Giuca to the stand, mitigating any prejudice caused by the late disclosure.

## IV.    The District Court's Refusal to Hold an Evidentiary Hearing on Cantoni's Motion to Suppress

Finally, Cantoni challenges the district court's refusal to hold an evidentiary hearing to determine whether Cantoni's statement providing his cell phone number on a preprinted, U.S. Marshals intake form during booking fell into the "routine booking question" exception to *Miranda v. Arizona*, 384 U.S. 436 (1966), as recognized in *Pennsylvania v. Muniz*, 496 U.S. 582 (1990). *Muniz* also recognized an exception to that exception—"[w]ithout obtaining a waiver of the suspect's *Miranda* rights, the police may not ask questions, even during booking, that are designed to elicit incriminatory admissions." *Id.* at 602 n.14. "To determine whether the police abused the gathering of pedigree information in a manner that compels *Miranda* protection requires an objective inquiry: Should the police have known that asking the pedigree questions would elicit incriminating information?" *Rosa v. McCray*, 396 F.3d 210, 222 (2d Cir. 2005). "[A]n evidentiary hearing on a motion to suppress ordinarily is required if 'the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.'" *United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005) (quoting *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992)). Cantoni's counsel below asserted that the fact that Detective Bonacarti—the government's case agent—completed the intake form instead of a U.S. Marshal was suspicious because "Bonacarti knew that Mr. Cantoni's phone number was an important fact when he asked him for the information in the guise of doing a Marshal's intake, for he surely was aware that gathering cell site location data in a case involving robberies in three different boroughs could be critical." App'x 460. But as the district court noted, this assertion was speculative and "not borne out by objective evidence, which consists of a standard USM-312 form, providing a space for an arrestee's cell phone number." Special App'x 5–6. The district court therefore did not err by refusing to hold an evidentiary hearing because Cantoni's argument was completely "conjectural."

\*    \*    \*

5

We have considered Cantoni's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk
